**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **ROBERT ESCOBEDO,** §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>**ANDREW APPLETON,** §<br>**XPO LOGISTICS, INC.,** §<br>**AND XPO EXPRESS, INC.,** §<br>*Defendants* § | **Case No. A-18-CV-877-SH** |

## ORDER

Before the Court are Defendants' Opposed Traditional and No-Evidence Motions for Partial Summary Judgment, filed March 27, 2020 (Dkt. 36); Plaintiff's Response, filed April 17, 2020 (Dkt. 38); and Defendants' Reply, filed April 24, 2020 (Dkt. 39). On November 14, 2019, the District Court transferred this case to the undersigned Magistrate Judge for all proceedings and the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 22.

### I. Background

Plaintiff Robert Escobedo alleges that he was driving on Interstate Highway 35 in Travis County, Texas on October 23, 2016, when he was stuck from behind by a commercial tractor-trailer operated by Andrew Appleton. Plaintiff alleges that at the time of the collision, Appleton was operating the vehicle in the course and scope of his employment with XPO Logistics, Inc.[1] and XPO Express, Inc. n/k/a XPO Logistics Express, Inc. ("XPO Express")[2] (collectively, the

---

[1] XPO Logistics, Inc. is the parent company to XPO Express and its successor. Dkt. 36-1 at 33.

[2] After the collision, XPO Express, Inc. d/b/a XPO Logistics merged into XPO Logistics Express, Inc., which then converted to XPO Logistics Express, LLC. Dkt. 36-1 at 32-33. Although Plaintiff misnamed

"XPO Defendants"). Plaintiff filed this negligence lawsuit in state court against Appleton, XPO Logistics, Inc., and XPO Express ("Defendants") on September 19, 2018. *Escobedo v. Appleton*, No. D-1-GN-18-005766 (126th Dist. Ct., Travis County, Tex. Sept. 19, 2018). In his Petition, Plaintiff alleges negligence and gross negligence against all Defendants, and negligent entrustment and negligent hiring against the XPO Defendants.

In their Answer, Defendants deny liability and claim that the accident was the result of Plaintiff's negligence. Defendants also contend that XPO Logistics, Inc., the parent company of XPO Express, is an improper party to this lawsuit. Defendants have filed a stipulation that Appleton "was an independent contractor leased onto XPO Express, Inc. at the time of the incident." Dkt. 35 at 1.

On October 15, 2018, Defendants removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Dkt. 1. Defendants now move for partial summary judgment under Federal Rule of Civil Procedure 56, arguing that they are entitled to judgment on all but Plaintiffs' negligence claim.

## II.    Legal Standards

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

---

XPO Logistics Express, LLC by referring to it under its old name, Defendants do not move for summary judgment on this basis. *See* Dkt. 39 at 3. For simplicity, the Court refers to the merged entity by its pre-merger name, "XPO Express."

U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.     Analysis

Defendants argue they are entitled to summary judgment on all but Plaintiff's negligence claim because XPO Logistics, Inc. is not a proper party, and Plaintiff's negligent hiring, negligent entrustment, and gross negligence claims fail as a matter of law for lack of evidence. The Court addresses each of these arguments in turn.

### A. Defendant XPO Logistics, Inc.

Defendants argue that XPO Logistics, Inc. is not a proper party to this lawsuit because it did not hire or employ Appleton, does not participate in the operations of XPO Express, exercises no control over the latter's employees or contractors, and did not entrust any motor vehicle to Appleton. Rather, Defendants contend that XPO Logistics, Inc. is the parent company of XPO Express, and it cannot be held vicariously responsible for its subsidiary's tortious conduct.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Under Texas law, a parent corporation generally is not liable for the torts of its subsidiaries. *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984). Piercing the corporate veil is permitted only in exceptional situations, including, for example, where the corporate entity of the subsidiary is being used as a sham to perpetrate a fraud, to avoid liability, or to avoid the effect of a statute. *Id.* at 384. Here, Plaintiff has failed to allege any exceptional circumstances that would warrant holding XPO Logistics, Inc. vicariously liable for the tortious conduct of its subsidiary's employee.

Plaintiff attempts to rely on the doctrine of *respondeat superior* to hold XPO Logistics liable by arguing that XPO Logistics, Inc. also was Appleton's employer. "Under the doctrine of *respondeat superior*, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). In order to prove Plaintiff's negligence, gross negligence, and negligent hiring claims against XPO Logistics, Inc., Plaintiff must prove that XPO Logistics was Appleton's employer at the time of the collision, and that he was acting within the course and scope of his

employment.[3] As explained below, Plaintiff has failed to do so. For Plaintiff's negligent entrustment claim, he must show that XPO Logistics, Inc. entrusted the vehicle involved in the accident to Appleton. *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016) (noting that the first element of negligent entrustment is to show that the defendant entrusted the vehicle to the plaintiff). Plaintiff has failed to show this as well.

### 1. Misnomer/Misidentification

Plaintiff does not dispute that XPO Logistics, Inc. is the parent company of XPO Express and that it is a separate legal entity. Nevertheless, Plaintiff argues that the misnomer rule applies in this case because XPO Logistics, Inc. "is the correct party to this litigation." Dkt. 38 at 6. As Defendants point out, neither the misnomer doctrine, nor the related misidentification doctrine, applies in this case.

Under Texas law, misnomer and misidentification are exceptions to the general rule that an amended pleading adding a new party does not relate back to the original pleading. *University of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011). A misnomer occurs when a plaintiff sues the correct entity, but accidentally misnames it. *In re Greater Houston Orthopedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009); *see also Barth v. Bank of Am., N.A.*, 351 S.W.3d 875, 877 (Tex. 2011) (holding that suit against "Bank of America Corporation" instead of "Bank of America, N.A." was a clear case of misnomer). "If the plaintiff merely misnames the correct defendant (misnomer), limitations is tolled and a subsequent amendment of

---

[3] *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130-31 (Tex. 2018) (noting that "to prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the worker (1) was an employee and (2) was acting in the course and scope of his employment"); *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012) (holding that plaintiff's negligent hiring claim failed where the plaintiff "presented no evidence of harm caused by an employee hired pursuant to [defendant's] hiring policies"); *Guidry v. Nat' l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App.—Austin 1997, no writ) (noting that plaintiff's negligent hiring claim required a finding of negligence in defendant's "hiring, supervision, or retention" of the employee).

the petition relates back to the date of the original petition." *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4 (Tex. 1990). "Courts are flexible in these cases because the party intended to be sued has been served and put on notice that it is the intended defendant." *In re Greater Houston*, 295 S.W.3d at 326. In contrast, misidentification arises when two separate legal entities exist, and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity. *Enserch*, 794 S.W.2d at 5 (finding that plaintiffs misidentified the proper corporate defendant "Enserch Corporation d/b/a Lone Star Gas Company" as "Lone Star Gas Company of Texas," a separate and distinct legal entity). In the case of misidentification, the plaintiff has sued the wrong party and the statute of limitations is not tolled. *Id.*

Here, the doctrine of misnomer does not affect Defendants' summary judgment motion because Plaintiff did not sue XPO Logistics, Inc. under an incorrect name.[4] *See Bailey*, 332 S.W.3d at 401 (holding that misnomer doctrine did not apply where plaintiffs "did not misname or misidentify their defendant; they sued exactly whom they intended to sue"); *Pfister v. De La Rosa*, No. 04-11-00475-CV, 2012 WL 2834762, at *2 (Tex. App.—San Antonio July 11, 2012, no pet.) (holding that doctrine of misnomer did not apply where plaintiff did not merely misname the correct defendant, but instead filed suit against and served the wrong defendant entirely).

The doctrine of misidentification also does not apply in this case. Plaintiff sued not only XPO Logistics, Inc., but also XPO Express, which Defendants assert is the correct legal entity. Thus, Plaintiff cannot claim that he was prejudiced by naming XPO Logistics, Inc. as a defendant because he can pursue his case against XPO Express.

---

[4] As noted above, Plaintiff did misname "XPO Logistics Express, LLC" by referring to it under a former name, but Defendants have stipulated that XPO Express Inc. n/k/a XPO Logistics Express LLC is the correct defendant. *See supra* n.2.

6

### 2. Evidence of Plaintiff's Employment

Plaintiff also appears to argue that XPO Logistics, Inc. is a proper defendant because it too was Appleton's employer. Plaintiff has failed to overcome the "strong presumption" against this contention:

> The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees. Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary— domination similar to that which justifies piercing the corporate veil—is sufficient to rebut this presumption, and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions.

*Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997) (citations omitted).

Defendants have submitted uncontroverted summary judgment evidence that XPO Logistics, Inc. is the parent company of XPO Express, a separate legal entity, and that XPO Express and not XPO Logistics, Inc. was the corporate entity that hired and employed Appleton. Aff. of Jamie Atkinson, Dkt. 36-1 at 32-33. "The facts in the defendant's affidavits are taken as true when the plaintiff files no counter-affidavits." *Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960). The evidence also shows that Appleton was hired as an independent contractor by XPO Express, not XPO Logistics, Inc. Dkt. 36-1 at 32-33; Dkt. 38-5. In addition, as previously noted, Defendants have filed a stipulation that XPO Express was the entity that employed Appleton, and that he

> was an independent contractor leased onto XPO Express, Inc. at the time of the incident, as such was a statutory employee of XPO Express, Inc., that he was in the course and scope of said statutory employment and, therefore, the doctrine of *respondeat superior* would apply and XPO Express, Inc. is vicariously liable for Appleton's conduct.

Dkt. 35; *see also* Dkt. 38-9 at 11 (acknowledging that Appleton was in the course and scope of XPO Express's employment when the accident occurred).

7

Plaintiff has failed to come forward with competent summary judgment evidence controverting these facts. While Plaintiff's Response points to certain evidence in the record to support his theory that XPO Logistics, Inc. is a proper defendant, none of that evidence demonstrates that XPO Logistics, Inc. hired or employed Appleton, or that Appleton was acting in the course and scope of this employment with XPO Logistics, Inc. at the time of the accident. *See* Dkt 38 at 6-7. For example, Plaintiff directs the Court's attention to Appleton's deposition, where Appleton states that he was driving for "XPO Logistics" and "XPO Express," and that both entities are "under the same umbrella." Dkt. 38-1 at 7. At no point, however, does Appleton testify that XPO Logistics, Inc. was his official employer. *See id.*

Plaintiff also points to correspondence between the XPO Defendants and their insurers stating that the name insured was "XPO Logistics." Dkt. Nos. 38-2-38-4. Again, this does not demonstrate that XPO Logistics, Inc. was Appleton's employer. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007) (finding that providing liability insurance to a subsidiary is not evidence by itself that the parent company and subsidiary "have disregarded corporate formalities.").

Inexplicably, Plaintiff also points to Appleton's employment application with XPO Express, but this shows that Appleton was applying for a position with XPO Express, not XPO Logistics, Inc. *See* Dkt. 38-5 (Appleton's employment application showing that "XPO Express" would be the employer). Plaintiff also directs the Court to a subcontractor agreement between Appleton and "XPO Logistics, Inc." Dkt. 38-6. However, this agreement is irrelevant to whether "XPO Logistics, Inc." is a proper party because it is an agreement not between Appleton and XPO Logistics, Inc., but rather between Appleton and "XPO Logistics DBA XPO Expedite," a separate Michigan corporation. *Id.* at 2. XPO Logistics, Inc., a Delaware corporation, is not listed in the agreement.

Similarly, Plaintiff identifies a "Partnership for Success" manual that was allegedly issued by XPO Logistics, Inc. Dkt. 38-7. This manual was issued by "XPO Logistics" (no "Inc."). *Id.* That is the legally assumed name of XPO Express, now known as XPO Logistics Express, LLC. Dkt. 39 at 6. In addition, the manual displays the company name as XPO Express, not XPO Logistics, Inc., at the top of each page. Dkt. 38-7.

Plaintiff next cites safety protocols that allegedly were provided by XPO Logistics, Inc. to Appleton. Dkt. 38-8. However, "[r]equiring all workers to comply with general policies and procedures governing quality, safety, and compliance with regulatory standards does not create an employment relationship." *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. SA-18-CV-404-XR, --- F. Supp. 3d ----, 2020 WL 1248263, at *19 (W.D. Tex. Mar. 16, 2020), *appeal docketed*, No. 20-50356 (5th Cir. May 1, 2020); *see also EEOC v. Valero Ref.-Texas L.P.*, No. 3:10-CV-398, 2013 WL 1168620, at *5 (S.D. Tex. Mar. 13, 2013) (finding that issuance of safety protocols did not demonstrate that corporation was joint employer). Accordingly, this evidence fails to show that Appleton was employed by XPO Logistics, Inc.

Plaintiff next argues that discovery responses from XPO Logistics Express, LLC, the successor entity to XPO Express, Inc., show that there was a misnomer. Dkts. 38-9, 38-10. Plaintiff fails to explain how any of the responses show that Appleton was employed by XPO Logistics, Inc. In fact, XPO Express's answer to Interrogatory No. 21 affirmatively states that Appleton was in the course and scope of XPO Express's employment at the time of the collision. Dkt. 38-9 at 11.

Finally, Plaintiff relies on Appleton's discovery answers allegedly showing that he worked for XPO Logistics, Inc. Dkt. 38-11. Appleton merely refers to working for "XPO" and in one other response "XPO Logistics" with no "Inc.," which is the assumed name of XPO Express. *Id.* at 4, 6. Neither response shows that Appleton was actually employed by XPO Logistics, Inc.

Plaintiff has failed to demonstrate that XPO Logistics, Inc. was Appleton's employer or that it entrusted a motor vehicle to Appleton. *See Carver*, 277 F.2d at 109 (affirming summary judgment because uncontroverted evidence established that plaintiff was not an employee of the insured). Accordingly, XPO Logistics, Inc. is entitled to summary judgment.

### B.  Negligent Hiring and Negligent Entrustment Claims

The Court next addresses Plaintiff's negligent hiring and negligent entrustment claims against the XPO Defendants. Defendants argue that Plaintiff has failed to come forward with any summary judgment evidence to support these claims. The Court agrees.

"[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.— Fort Worth 2002, no pet.). A claim for negligent hiring "requires that the employer's failure to investigate, screen, or supervise its [hirees] proximately caused the injuries the plaintiffs allege." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) (internal quotations omitted).

To establish liability under the theory of negligent entrustment, Plaintiff must show that: (1) the XPO Defendants entrusted the vehicle to Appleton; (2) Appleton was an unlicensed, incompetent, or reckless driver; (3) at the time of the entrustment, the XPO Defendants knew or should have known that Appleton was an unlicensed, incompetent, or reckless driver; (4) Appleton was negligent on the occasion in question; and (5) Appleton's negligence proximately caused the accident. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 758 (Tex. 2007).

Defendants argue they are entitled to summary judgment on Plaintiff's negligent hiring claim because Plaintiff is unable to come forward with any evidence that the XPO Defendants knew or should have known that Appleton allegedly was unfit at the time he was hired, or that their hiring

practices proximately caused Plaintiff's damages. In addition, Defendants argue that they are entitled to summary judgment on Plaintiff's negligent entrustment claim because he has failed to come forward with any evidence to support any of the five elements of the claim.

Plaintiff fails to address Defendants' arguments with regard to these claims or specifically identify any evidence supporting a prima facie case under either claim. Instead, Plaintiff makes the conclusory allegation that "there is evidence to support Plaintiff's claims of negligent hiring [and] negligent entrustment." Dkt. 38 at 8. In addition, Plaintiff asks the Court "to take judicial notice" of "all pleadings, motions, emails, officer's returns, exhibits, and other papers on file with the Court." Dkt. 38 at 3. The Court is not required "to parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006); *see also* FED. R. CIV. P. 56(c) (1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). As the Fifth Circuit instructs:

> [A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. The party opposing summary judgment must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial. The movant is entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Powers v. Northside Indep. Sch. Dist.,* 951 F.3d 298, 307 (5th Cir. 2020) (cleaned up).

By failing to respond to Defendants' arguments regarding Plaintiff's claims for negligent hiring and negligent entrustment, Plaintiff has failed to sustain his burden of proof to defeat summary judgment and also appears to have abandoned those claims. *See Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (stating that plaintiff abandoned her claim because she

11

failed to defend it in her response to the defendant's motion to dismiss and failed to pursue the claim beyond her complaint)); *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned."). Because Plaintiff has failed to make a sufficient showing on essential elements of his negligent hiring and negligent entrustment claims, the XPO Defendants are entitled to summary judgment on those claims.

### C. Gross Negligence Claims

Plaintiff also alleges gross negligence against all Defendants. Defendants argue that Plaintiff has failed to come forward with competent summary judgment evidence to support his gross negligence claim. The Court agrees. Under Texas law, gross negligence is defined as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981). Gross negligence comprises both objective and subjective elements. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012).

To establish gross negligence, a plaintiff must prove by clear and convincing evidence that (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *Medina v. Zuniga*, 593 S.W.3d 238, 248 (Tex. 2019). As the Texas Supreme Court has explained:

> Under the first, objective element, an extreme risk is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. To establish

> the subjective component, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care. The risk should be examined prospectively from the perspective of the actor, not in hindsight. The defendant need not have anticipated the precise manner of harm or to whom the injury would befall to have had awareness of the extreme risk.

*Id.* (cleaned up).

Here, Plaintiff relies on three statements Appleton made during his deposition to support his gross negligence claim. Specifically, Plaintiff relies on Appleton's testimony that:

(1) he was driving on the lower deck of I-35 in the left lane, Dkt. 38-1 at 13;

(2) traffic was slowing down and came to a complete stop right before the accident, *id.* at 15; and

(3) he did not notice Plaintiff's vehicle, which was traveling in the right lane, until Plaintiff suddenly moved to the left lane directly in front of Appleton.[5] *Id.* at 21.

Plaintiff fails to provide any analysis or argument why Appleton's testimony supports his claim for gross negligence. The Court finds that none of these statements, singularly or in combination, meet the high threshold for a jury to find gross negligence under Texas law.

The *Medina* opinion demonstrates the high bar that Texas courts require plaintiffs to meet in order to establish gross negligence. In *Medina*, a pedestrian who was hit by a "thoughtless, careless, and risky" driver in a school parking lot sued the driver for negligence and gross negligence. *Id.* at 249. The undisputed facts showed that the defendant: (1) "messed" with another driver by backing his truck toward the other driver before pulling into the school parking lot; (2) accelerated rapidly through the parking lot, reaching a speed of 24 miles per hour in a 10 mile per hour traffic zone; (3) failed to stop at the parking lot exit and looked only to his left before

---

[5] Plaintiff fails to mention that Appleton also testified that Plaintiff "cut over" into Appleton's lane just before the accident, Appleton could not recall whether Plaintiff had used his turn signal, and Appleton applied his brakes and tried not to hit Plaintiff, but was unable to avoid the collision. Dkt. 38-1 at 15.

exiting and striking the plaintiff, who was approaching from the right; (4) was aware that pedestrians were on the school grounds; and (5) drove on the sidewalk as he exited. *Id.* at 248.

Based on this evidence, jury found that the defendant was liable for both negligence and gross negligence. The court of appeals affirmed. The Texas Supreme Court, however, reversed, concluding that the evidence supported only a finding of ordinary negligence, not gross negligence. Specifically, the court noted that "the objective gross-negligence standard must remain functionally distinguishable from ordinary negligence," and that an "extreme degree of risk" is a threshold significantly higher than the "objective reasonable" person test for negligence. *Id.* at 249 (cleaned up). Thus, "[a]n act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Id.* The court reasoned:

> Viewing the evidence in favor of the jury's verdict, no doubt exists that Medina's driving was thoughtless, careless, and risky. But any driver knows that our roads are replete with thoughtless, careless, and risky drivers. Gross negligence can be supported only by an extreme degree of risk, not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.

*Id.*; *see also Boerjan v. Rodriguez*, 436 S.W.3d 307, 312 (Tex. 2014) (holding that there was insufficient evidence to show a defendant who followed trespassers was grossly negligent where there was no evidence that the defendant chased the plaintiffs at high speeds, made any aggressive moves, or followed the plaintiffs too closely with his vehicle).

Several intermediate appellate courts similarly set a high bar to find gross negligence on the part of a driver in automobile accident cases. For example, in *Williams v. Crawford*, No. 03-16-00696-CV, 2018 WL 1124306, at *15 (Tex. App.—Austin, Mar. 2, 2018, no pet.), the defendant was driving an armored truck on a rainy day while eating sunflower seeds. The driver momentarily took his eyes off the road as he approached an intersection and rear-ended the plaintiff's vehicle, which was stopped at a red light. *Id.* The jury found that the driver had been grossly negligent. The

Texas appellate court reversed. While the court noted that the defendant had admitted that he was distracted at the time of the collision and that he was not looking ahead, it found that there was no evidence to suggest that the defendant "was speeding as he approached the intersection or that he was driving at an unsafe distance, aggressively, or erratically before looking down." *Id.* While the court also noted that there was no dispute the evidence showed that the defendant was negligent, it reasoned: "[W]e cannot conclude that Williams's conduct posed an extreme degree of risk such that a reasonable factfinder could form a firm belief or conviction that Williams was grossly negligent." *Id.*

Similarly, in *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103 (Tex. App.—Beaumont June 28, 2001, no pet.), the defendant rear-ended a vehicle, causing one of the passengers to become paralyzed. The defendant was driving a moving van without the requisite commercial driver's license because he failed to meet the vision requirements and had failed the written portion of the exam twice. *Id.* at 112. The jury found that the defendant had been grossly negligent, but the Texas appellate court overturned the decision. The court noted that the defendant "was not driving appreciably faster than other vehicles on the highway, and a witness noticed nothing erratic or unusual about his driving before the collision." *Id.* at 128. The court further noted that the defendant's failure to observe that the plaintiff's vehicle had stopped "was careless and had tragic consequences," but "behavior that is merely thoughtless or careless is not malicious or grossly negligent." *Id.* Thus, the court concluded that defendant's driving "viewed objectively and without the benefit of 20-20 hindsight, did not rise to the level of extreme risk required" to show gross negligence. *Id.*

In light of these holdings, no reasonable juror could find by clear and convincing evidence that Appleton was grossly negligent in this case. Like the defendants in the above cases, a jury could

15

find that Appleton may have been careless in failing to keep a safe distance between his vehicle and Plaintiff's vehicle, but careless behavior does not rise to the level of gross negligence. *Emmons*, 50 S.W.3d at 128. Plaintiff identified no evidence showing that Appleton's driving exhibited an extreme degree of risk to Plaintiff. In sum, no reasonable factfinder could find by clear and convincing evidence that Appleton's actions created an extreme risk of serious injury and rose above mere carelessness, or form a firm belief or conviction that he was grossly negligent. For that reason, summary judgment is appropriate as to Plaintiff's claim of gross negligence against Defendant Appleton and the XPO Defendants.[6]

### IV.   Conclusion

Based on the foregoing, Defendants' Motion for Partial Summary Judgment (Dkt. 36) is **GRANTED** in its entirety. Accordingly, the Court hereby **DISMISSES** XPO Logistics, Inc. as an improper party in this case. The Court also **DISMISSES** Plaintiff's negligent hiring, negligent entrustment, and gross negligence claims. The sole remaining claim is Plaintiff's negligence claim against Defendants Andrew Appleton and XPO Express, Inc.

**SIGNED** on June 29, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

---

[6] Because Plaintiff has failed to show that Appleton was grossly negligent, he also fails to state a viable claim against the XPO Defendants. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998) ("A corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent.").